PETER V. POOR & another[1] *vs.* ASA COBB PAINE LOMBARD, THIRD, & others.[2]

No. 07-P-722.

Suffolk. March 3, 2008. - September 29, 2008.

Present: GRASSO, ARMSTRONG, & RUBIN, JJ.

*Real Property,* Deed. *Practice, Civil,* Stipulation, Standing.

In an action brought in Land Court by plaintiffs seeking to confirm without registration their title to a parcel of land (locus) pursuant to G. L. c. 185, § 26A, the judge did not err in allowing the plaintiffs' motion to strike the defendants' appearance and objection, where the judge properly relied on a finding that a lost, unrecorded deed had once existed to conclude that the defendants neither held title to certain property abutting the locus nor benefited from an appurtenant profit à prendre. [721-722]

In an action brought in Land Court by plaintiffs seeking to confirm without registration their title to a parcel of land pursuant to G. L. c. 185, § 26A, there was no merit to the defendants' arguments that the judge lacked authority to vacate a stipulation previously filed by the parties [722] or that the title could only be confirmed by an order containing findings of fact and conclusions of law [722-723].

COMPLAINT for confirmation of title without registration filed in the Land Court Department on July 12, 1993.

The case was heard by *Leon J. Lombardi,* J.

*H. Sarkis Terkanian* for the plaintiffs.

*John D. Hallisey* for the defendants.

RUBIN, J. The plaintiffs brought this action pursuant to G. L. c. 185, § 26A, seeking to confirm without registration their title

[1]Anna Maria Poor. The original plaintiffs were Peter V. Poor and Anne B. Poor. During the proceedings below, the Land Court judge allowed the substitution of Anna Maria Poor for Anne B. Poor.

[2]Florence Lombard Brown, Ruth Lombard Gourley, Edith L. Cassick, Barbara Banuk, Susan Black, Marcia Jean Taylor, Deborah Cavanaugh, and Catherine Louise Harper.

to a parcel of land in Truro containing 10.12 acres (locus). A citation issued ordering service by publication. No objections were filed by the return date, and the Land Court judge entered an order for decree confirming the plaintiffs' title to the locus. On the date that order issued, the defendants filed a motion to appear and answer late, which was granted, and they subsequently filed an answer that contained an objection to the plaintiffs' complaint. The defendants claim to be the heirs of Asa Cobb Paine, Jr. (Paine), and, as such, to hold title to part of the property abutting the westerly boundary of the locus (cove land), particularly a parcel known as the "Paine Parcel."[3] They further claim that, as owners of the Paine Parcel, they have the benefit of an appurtenant profit à prendre to take sand from the northerly hill situated on the locus, and a right to use various roads and vehicle tracks over the locus.[4] In his November, 2006, decision, the Land Court judge found that the defendants did not hold title to the Paine Parcel, and allowed the plaintiffs' motion to strike the defendants' appearance and objection.[5] After denial in part of their motion to amend findings and their motion to reconsider that denial, the defendants appealed.

The defendants argue that the Land Court judge erred because his decision that they did not hold title to the Paine Parcel relied upon a finding that a lost, unrecorded deed had once existed. The premise of the defendants' claim against the plaintiffs is that Paine took undivided title to the Paine Parcel in 1863. A 1911 deed from Jacob Rich purports to convey to Anna J. DeChamp, among other things, the Paine Parcel. It is on this chain of title that the plaintiffs rely. There is, however, no re-

---

[3]During the proceedings below, the Land Court judge allowed the substitution of Marcia Jean Taylor, Deborah Cavanaugh, and Catherine Louise Harper for Edward E. Lombard, one of the original defendants. For purposes of our decision, we assume without deciding, as the Land Court judge did, that the defendants were Paine's heirs, and not merely his descendants.

[4]A profit à prendre is similar to an easement, but includes the right "to take from the land of another either a part of the soil, such as . . . sand . . . ; or part of its produce." *Gray* v. *Handy*, 349 Mass. 438, 441 (1965).

[5]In October, 2005, the town of Truro took a fee simple interest in 3.55 acres of the locus by eminent domain, including its northerly hill in which the defendants claim they have sand rights, awarding the plaintiffs $2,000,000. This taking is irrelevant to the legal issues in the case before us.

corded deed out from Paine, who died in 1909, to Jacob Rich. The Land Court judge inferred that Paine had deeded the Paine Parcel to Jacob Rich some time before 1909.

The slippery slope of inferring the existence of a lost, unrecorded deed may well be perilous, but the refusal to infer the existence of such a deed could also have grave consequences, and our courts have long found the practice proper. See, e.g., *White* v. *Loring*, 24 Pick. 319, 322-323 (1837). The defendants recognize this, but argue that a lost deed may only be inferred if the facts of adverse possession in the grantee (and, if relevant, the grantee's successors) are established. See *Gayetty* v. *Bethune*, 14 Mass. 49, 55 (1817) (stating that "it is *adverse possession* only, upon which a presumption of a grant can arise") (emphasis in original). In this case, the record owner of the Paine Parcel through the chain of title starting with the deed from Rich to DeChamp, and then to Marguerite F. DeChamp Cook, and then to Cook, as trustee for Francis Patrick, did not appear in this action to establish adverse possession.

Although a legal presumption of a "lost grant" is said to arise as a result of adverse possession, see *Tinker* v. *Bessel*, 213 Mass. 74, 76 (1912) ("Title by prescription or adverse possession rests upon the fiction of a lost grant"), that presumption (which is what is referred to in the *Gayetty* case) is distinct from the question implicated here: whether there was, in fact, an actual lost, unrecorded deed. The Supreme Judicial Court has treated a claim of an actual lost deed as distinct from one claiming adverse possession. See *Ingalls* v. *Newhall*, 139 Mass. 268, 269 (1885). Compare *Coolidge* v. *Leonard*, 8 Pick. 504, 509-510 (1829) (in making a claim based on adverse possession, a "party [is] allowed to plead a non-existing grant"). The two claims have been treated as distinct in other jurisdictions as well. See, e.g., *Walker* v. *Walker*, 273 Ala. 106, 108-109 (1961); *Franzen* v. *Donichy*, 9 Ill. 2d 382, 387-389 (1956); *Smith* v. *Libby*, 122 Me. 156, 158-159 (1922).

Since a lost, unrecorded deed may be inferred even in the absence of proof of adverse possession, the defendants' claim fails. There was no clear error in the judge's finding of fact that

there was an unrecorded deed out from Paine into Rich.[6] The Land Court judge's conclusion that the defendants do not have title in the Paine Parcel therefore must be affirmed.

The defendants' remaining contentions are insubstantial. After the defendants appeared and answered, the parties filed a stipulation providing that the order for judgment be vacated with respect to the defendants only. In his order, the Land Court judge vacated that stipulation and ordered that when judgment entered it should confirm the plaintiffs' title free of any claim asserted by the defendants.

The defendants now claim that this was error. First, the defendants argue that the judge lacked authority to vacate the stipulation which, they argue, was a binding contract between the parties. This argument, though, is based on a misreading of the stipulation. It was entered to protect the plaintiffs' rights with respect to third parties while the defendants' claims were tried. The stipulation did nothing more than agree to vacatur of the order as to the defendants, pending the conclusion of the proceedings or further action of the court. It did not purport to resolve conclusively the dispute between the parties (as the defendants' argument implies) or to limit the court's power to re-enter judgment for the plaintiffs. The Land Court judge's order could have provided that the stipulation was superseded rather than vacated, but there was nothing wrong with the words used.

Second, the defendants argue that, because this case proceeded to trial as a contested case under G. L. c. 185, § 43, the plaintiffs' title could only be confirmed by an order containing findings of fact and conclusions of law as to that title. See Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). But the Land Court judge's conclusion (contained in a written decision that complied with rule 52[a]) that the defendants do not hold title to the Paine Parcel, the conclusion that we affirm, means that the defendants lacked whatever standing they otherwise might have had to challenge the confirmation of the plaintiffs' title. See, e.g., *Harvey* v. *Inhabitants of Sandwich*, 256 Mass. 379, 383 (1926).[7]

---

[6]That finding was supported not only by the 1911 deed, but also by an 1899 deed for an abutting property that mentions Rich as an abutter.

[7]The plaintiffs urge that even if the defendants had owned the Paine Parcel,

No further findings with respect to that title were required.[8]
The judgment of the Land Court is affirmed.

*Judgment affirmed.*

they could have sought in the proceeding below only to assert their sand rights, not to challenge the plaintiffs' claim of title. Given our disposition of the case, this is an issue we need not and do not address.

[8]Because we hold that the defendants lack standing to challenge the confirmation of the plaintiffs' title, we do not address their arguments concerning that title. In addition to urging that, because their title should not be confirmed, the plaintiffs are not entitled to compensation for the town's taking of a portion of the locus, see note 5, *supra,* the defendants also suggest that the town's taking in fact took their sand rights. Our decision today, however, means that they had no sand rights in the locus prior to the town's exercise of its eminent domain power. And, while we express no opinion on the legal meaning of the order of taking by eminent domain, we do note that it provides that the property taken by the town "shall not include and shall exclude the rights of others in and to any sand rights in the Premises, MEANING AND INTENDING that any sand rights held by others in said Premises shall be retained by the owners thereof and are not taken from them by this Order of Taking."